# Exhibit A



# ERC SERVICE AGREEMENT

This Consulting Service Agreement ("Agreement") is made and entered into on this __6TH__ day of __JAN__, 2023, ("Effective Date") by and between ___SME Service LLC___, Registered at ___16192 Coastal Highway, Lewes, DE 19958___ (the "Company") and _SOLARJUICE AMERICAN INC_ located at _6950 PRESTON AVE, LIVERMORE, CA 94551_ (the "Client"). Company and Client are sometimes referred to herein individually as a "Party" and collectively as the "Parties."

**IN CONSIDERATION OF** the mutual promises contained in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

**1.      Client Obligations.** Client shall provide complete and accurate information of its documents and files relating to this Agreement. Client shall keep complete and accurate records of its activities relating to the performance of this Agreement.

## 2.      CONSULTING SERVICES

**2.1    Scope of Services.** Subject to the terms and conditions of this Agreement, Company is hereby retained by Client to provide the Consulting Service in evaluating, selecting, and compensation a licensed CPA or tax lawyer to prepare an Employee Retention Credit (ERC) Application. This Consulting Service is referred to herein as the "Services". Services Deliverables including：

   1). A solution package in evaluating, selecting, and compensation a licensed CPA or tax lawyer to prepare the Employee Retention Credit (ERC) related forms.

   2). A detailed Employee Retention Credit (ERC) related materials.

**2.2     Independent Contractor.** Company will determine the method, details, and means of performing the Services. At its own expense, Company may use employees, contractors and third party CPA or tax lawyer offices to perform the Services under this Agreement. Company and Client understand and intend that Company shall perform the Services as an independent contractor and not as an employee of Client. Nothing in this Agreement will be deemed to create an agency, partnership, or joint venture between the Parties.

**2.3     Exclusive Services Provider.**  During the term of this Agreement, Client shall be the exclusive provider of the Services. Client shall not seek or accept similar services from other providers unless the prior written approval is obtained from Company.

## 3.      COMPENSATION AND PAYMENT

**3.1    Fees and Expenses.** For the Services provided by Company pursuant to this Agreement, Company shall be compensated at _Twelve and a half_ **Percent (_12.5_%_)** of the ERC payments and credits received, which shall be payable within seven (7) days upon receipt. Compensation will include reimbursement for all reasonable and necessary travel, living, and out-of-pocket expenses incurred by Company in providing the Services, when travel is required in order to provide the Services. Company will obtain Client's approval for billable travel prior to incurring any expense for such travel.

Initials 

**3.2     Payment.** Company will invoice Client on a payment schedule. Client's payment terms will be in U.S. Dollars and paid in full within thirty (30) days after the invoice date.

**3.3     Overdue Invoices.** In addition to any other remedy available to Company for late payments, Client will be obligated to pay Company interest for fees and charges not paid within twenty-one (21) days after the invoice date at the compounded rate of five percent (5%)| per month or the maximum allowed by law, whichever is less for each month (or partial month), calculated from the date such payment was due until the date paid. If Client elects to discontinue the Services and does not pay the outstanding fees and charges in full within twenty-one (21) days of such election, Client will continue to be charged interest until the balance is paid in full. Client will be responsible for any costs, including attorney's fees, incurred by Company in collecting any past due amounts under this Agreement.

DocuSign Envelope ID: C2F24AF9-C631-4456-B323-DC1C167A14DB



### 4. TERM AND TERMINATION

**4.1  Term.** The term of this Agreement will begin on the Effective Date and will remain in full force and effect until the expiration of the term of all Services, unless earlier terminated as provided in this Agreement.

**4.2  Termination.** Client may terminate this Agreement at any time prior to submission of ERC application. Company may terminate this Agreement if Client fails to promptly pay any fees or charges when due or upon material breach by Client of one or more of the terms and conditions of this Agreement, provided that Client is notified in writing of the failure or beach and such failure or breach is not cured or a satisfactory resolution agreed upon in writing by the Parties within sixty (60) days after receipt of such written notice.

### 5. CONFIDENTIALITY

**5.1  Confidential Information.** Under this Agreement, "Confidential Information" refers to any and all information of a Party ("Disclosing Party") that has been disclosed to the other Party ("Receiving Party"), which is designated in writing as confidential, proprietary, or secret or under the context of its disclosure ought to reasonably be considered as confidential. Confidential Information includes, but is not limited to, all information concerning a Party's existing business, business systems, business plans and information systems, trade secrets, prices, and pricing information.

**5.2  Use of Confidential Information.** Each Party will comply with all laws and regulations that apply to use, transmission, storage, disclosure, or destruction of Confidential Information. Both Parties agree to hold the other Party's Confidential Information in strict confidence. Client agrees not to use Company's Confidential Information in any way, except as expressly permitted by or required to achieve the purposes of this Agreement, and Company agrees to use Client's Confidential Information solely for the purpose of performing the Services. Both Parties agree to use all reasonable efforts to protect unauthorized use or distribution of Confidential Information and the Receiving Party agrees to use at least the same degree of care to prevent disclosing to third parties the Confidential Information of the Disclosing Party as the Disclosing Party uses to protect its own Confidential Information. The Receiving Party further agrees not to disclose or permit any third party access to the Disclosing Party's Confidential Information, except such disclosure or access will be permitted in order to perform the Services provided under this Agreement. Each Party agrees to ensure that its employees, agents, representatives, and contractors are advised of the confidential nature of the Confidential Information and are precluded from taking any action prohibited under this Agreement.

**5.3  Limitation of Use.** Confidential Information will not include information of the Disclosing Party which: (i) is publicly available as of the Effective Date or becomes publicly available thereafter through no fault of the Receiving Party; (ii) the Receiving Party rightfully possessed before it received such information from the Disclosing Party; (iii) is subsequently furnished to the Receiving Party by a third party without restrictions on disclosure; or (iv) is required to be disclosed by law, provided that the Receiving Party will promptly notify the Disclosing Party and cooperate, at the Disclosing Party's expense, to permit the Disclosing Party to seek appropriate protective orders from the issuing court of government authority limiting disclosure or use of the Confidential Information.

**5.4  Ownership of Confidential Information.** Except as explicitly stated in this Agreement, Receiving Party is granted no license or conveyance of Disclosing Party's Confidential Information or any intellectual property rights therein. Title to the Disclosing Party's Confidential Information shall remain solely with the Disclosing Party.

**5.5  Destruction of Confidential Information.** Upon the expiration or termination of this Agreement, each Party shall, upon request of the other Party, destroy all Confidential Information of the other Party. The Receiving Party shall certify such destruction to the Disclosing Party within thirty (30) days following request for such certification.

**5.6  Remedies.** Both Parties agree that any unauthorized use or disclosure by the Receiving Party of the Disclosing Party's Confidential Information in a manner inconsistent with the terms of this Agreement may cause the Disclosing Party irreparable damage for which remedies other than injunctive relief may be inadequate. Accordingly, if the Receiving Party discloses or uses (or threatens to disclose or use) any Confidential Information of the Disclosing Party in breach of confidentiality protections hereunder, the Disclosing Party will have the right, in addition to any other remedies available, to seek injunctive relief to enjoin such acts.

### 6. LIMITATION OF LIABILITY & DISCLAIMER OF WARRANTIES

**6.1** COMPANY SHALL NOT BE LIABLE TO CLIENT FOR (1) ANY ACTS OR OMISSIONS WHICH ARE NOT THE RESULT OF COMPANY'S GROSS NEGLIGENCE, RECKLESSNESS OR WILLFUL MISCONDUCT, (2) ANY AMOUNTS IN



EXCESS OF ANY FEES PAID TO COMPANY BY CLIENT IN THIS AGREEMENT (3) ANY LOSSES, COSTS, DAMAGES OR EXPENSES INCURRED BY CLIENT RESULTING FROM THE PERFORMANCE OF ANY SERVICE.

## 7.     GENERAL PROVISIONS

**7.1     Governing Law.** This Agreement is governed by the laws of the state of Delaware and shall be governed by and construed and enforced in accordance with the laws of the state of Delaware as it applies to a contract made and performed in such state. The federal and state courts located in the state and county of Delaware will have jurisdiction to adjudicate any dispute arising out of or relating to this Agreement. Each Party hereby consents to the jurisdiction of such courts and waives any right it may otherwise have to challenge the appropriateness of such forums, whether on the basis of the doctrine of forum non convenience or otherwise.

**7.2     Force Majeure.** Neither Party is responsible for delays or failures to perform its responsibilities under this Agreement due to causes beyond its reasonable control, including but not limited to act of God, acts of government, floods, fires, earthquakes, tornados, civil unrest, acts of terror, labor disputes, computer, telecommunications, internet service provider or hosting facility failures, delays involving hardware, software, or power systems, malicious code, denial of service threats, or inability to obtain energy; provided however, that the Party so affected will promptly resume performance as soon as reasonably practical.

**7.3     Severability.** If any provision of this Agreement is declared or found to be prohibited, unenforceable or void, the Parties will negotiate in good faith to agree upon a substitute provision that is valid, binding, and enforceable and is as nearly as possible consistent with the intentions underlying the original provision. If the Parties are unable to agree upon such substitute provision, the original provision will be stricken. If the remainder of this Agreement is not materially affected by such declaration or finding and is capable of substantial performance, then the remainder shall be enforced to the extent permitted by law.

**7.4     Insurance/Authorization.** Company shall carry adequate liability, property, workers' compensation, umbrella and other insurance of a kind and in an amount generally carried by persons engaged in the same or a similar kind of business similarly situated, unless, in any case, other types of insurance or higher amounts are required by Client. Upon request, Company shall supply to Client a certificate(s) of insurance evidencing the same. Company hereby represents, warrants, and covenants to Client that it has and/or will have and maintain all necessary permits, license, approvals and other authorizations applicable to the performance of its obligations contemplated under this Agreement.

**7.5     Entire Agreement.** This Agreement (including any referenced Exhibits) constitutes the entire agreement between the Parties. No modification, amendment, or waiver of any provision of this Agreement will be effective unless in writing and signed by both Parties hereto.

**7.6     Waiver.** No delay or failure by either Party to exercise any right or power under this Agreement will constitute a waiver of that right. A waiver by any Party of any of the covenants, conditions or agreements to be performed by the other Party or any breach thereof will not be construed to be a waiver of any succeeding breach thereof or of any other covenant, condition, or agreement herein contained. No change, waiver, or discharge hereof will be valid unless in writing and signed by an authorized representative of the party against which such change, waiver, or discharge is sought to be enforced.

**7.7     Counterparts/Electronic Signatures.** The Parties may execute this Agreement in multiple counterparts, each of which constitutes an original as against the Party that signed it, and all of which together constitute one agreement. The signatures of all Parties need not appear on the same counterpart. The delivery of signed counterparts by facsimile, email or other electronic transmission that includes a copy of the sending Party's signature is as effective as signing and delivering the counterpart in person.



**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed by their duly authorized representatives, as of the Effective Date.

| [COMPANY] | [CLIENT] |
|---|---|
| _____SME Service LLC_____ | ____SOLARJUICE AMERICAN INC____ |
| By: _susanna shao_ (DocuSigned by, F29C8882639A4DE...) | By: _[signature]_ (DocuSigned by, 8699F1A1E39647D...) |
| Name: susanna shao | Print Name: Xiao Feng Peng |
| Title: ___President___ | Title: CEO |
| Date: 1/6/2023 | Date: 1/9/2023 |

**Remainder of Page Intentionally Left Blank**